Mr. Marker v. Noe Juarez Ms. Flager May it please the Court, Ada Flager on behalf of Noe Juarez Mr. Juarez raised three claims on appeal I'd like to begin by discussing the body armor enhancement and turn to the other issues to the extent that this Court has questions The language of the body armor enhancement in the sentencing guidelines in section 3B.1.5 is clear and clearly doesn't apply under the facts of this case But even if, as the government argues, the language is ambiguous canons of statutory construction would demonstrate that it clearly the enhancement clearly cannot be applied under the circumstances of this case turning first to the plain language of the enhancement itself The enhancement applies where a defendant used body armor during the commission of the offense in preparation for the offense or in an attempt to avoid apprehension And in turn, the guidelines commentary defines use saying use means active employment in a manner to protect a person from gunfire or use as a means of bartering The use of the word means there in the definition first demonstrates that this is an exhaustive rather than illustrative list This is what use means So use, in order to have used body armor you either need to have used it to protect you from gunfire or you need to have bartered What's your take of barter? What is its association to being actually used to protect the criminal and the commission of the crime? When we look at the statute that required the commission to come up with a guideline like this it's talking about the heinousness and risks to police officers and whatever else Name for two officers who were killed when body armor was being used It doesn't seem to me they're worried about selling or bartering either So what's your take? What was the commission doing when it said barter that would somehow make a draw out of being used while the criminal was committing the crime? Well, Your Honor, there is no explanation for that in the commission's minutes or anything that I can find But I believe that likely what happened there was that the commission was attempting to adopt the Supreme Court's interpretations of the word use in the 924C context where a defendant uses a firearm in the course of a drug trafficking or crime of violence and there had been two previous Supreme Court cases, Smith and Bailey that had defined use first as being the barterer in a firearms transaction and then second, in Bailey, requiring that use be active employment of the firearm So I believe that it was an attempt to give meaning consistent with the word use in the 924C context But to the extent that that guideline's commentary is read as expanding on the definition of use because Your Honor is absolutely right that the legislative history for this particular enhancement is concerned particularly with defendants wearing body armor during the course of their crime But nothing about that act would have kept the commission from being able to go further than that What Congress said, let's at least make this a particularly costly crime for someone to commit But the commission could have gone beyond that without being dismissive of the congressional, of the act, right? Absolutely, Your Honor. And they did, in fact, go farther than that But they did not extend it to this circumstance here But if we decide that they did, that wouldn't be inconsistent with the act, would it? I mean, all Congress says is we want to make sure you do X And if the commission decides to do Y as well, that's not inconsistent with Congress It wouldn't be inconsistent with the act of Congress It would be inconsistent with the guidelines, which is what we're concerned with here But we're trying to figure out what it means and to what extent does congressional intent limit the commission or at least just guide it in what it's doing? The congressional intent absolutely guides the commission in establishing an enhancement But the commission then establishes an enhancement which the district court is bound to faithfully apply to correctly calculate and then consider in making its sentencing determination And so the language of the guideline is what controls here And the language of the guideline here creates an exclusive list The defendant uses body armor either when they are using it to protect themselves from gunfire or when they are using it in a barter transaction And both the guidelines themselves and this court have distinguished barter, barter transactions from monetary transactions There are two places in the guidelines where those are distinguished And this court's precedent in a case we cited in the brief hangman also distinguishes barter from sale What do you make of, I don't know the source of it, the PSR, if it's an addendum or if it's in the original PSR, talks about some sort of communication with the commission Can you, maybe that's more for the other side, can you explain what your understanding of that is? My understanding of that is that the probation officer spoke with, I believe his name is Alan Dorhoffer who's the head of the education branch of the Sentencing Commission So essentially the helpline of the Sentencing Commission It certainly wasn't under the provision, I have it here, provision I think 28 U.S.C. 994, but I can get it for you, where the majority of the voting members of the Sentencing Commission express an opinion or provide instruction to probation officers, that certainly wasn't what happened here It was advice given sort of informally in that context And while the Sentencing Commission might be able to provide advice to the probation officers, that certainly wouldn't be controlling on the district court and wouldn't override the plain meaning of the guideline itself So in turning beyond the plain language, which we maintain is clear, the government advances the argument that it would be absurd to apply the guideline only as it is written to barter transactions Unfortunately for the government, however, that is not what courts have used to determine absurdity The idea that there would be asymmetry in the application of a law does not create absurdity which can override the text of it itself So in fact in the Supreme Court's Watson case, which dealt with the definition of use in the 924C context and determined that a barteree doesn't use a firearm even if a barterer does So even if the person giving the firearm uses a firearm, the person receiving it doesn't I'm glad you explained that. I wasn't sure who the barterer was and the barteree I kept getting it confused in preparation as well Even that asymmetry wasn't enough for the court to reject the plain meaning of the statute which it interpreted to only apply to the person giving a firearm And it rejected the government's argument there that that would lead to absurd results by saying that it would be better for Congress to amend it if that's what they meant rather than to rake the plain meaning to cover a circumstance which it did not Under the plain meaning, what is the archetypical barter situation? For body armor? For body armor For body armor When would a barter take place? Well, first, there's very, very, very little case law on the body armor enhancement generally and we've been unable to find any which applies in this barter context So I can only speak to what common sense might dictate What a reasonably well-informed lawyer would say this means When has a barter taken place? When in a situation that's supposed to be covered by this guideline, when would that barter have taken place? Perhaps by analogy to the 924C cases where folks are trading firearms for drugs would be a typical barter circumstance And it would be, again, this court has defined barter to mean any transaction which involves exchange that is not a monetary exchange So we, unfortunately, because this has been very rarely applied, there is no particular guidance on using barter in this circumstance And, again, this court, the congressional intent of the enhancement, as Your Honor previously referenced, deals with the public safety threat of criminals who wear body armor And while certainly the guidelines provision could go farther, it's not inconsistent with congressional intent to apply an enhancement where defendants are wearing body armor, as was done here Finally, turning to the harmlessness or harmfulness of this error The sentencing guidelines calculation error will only be considered harmless where there is a detailed explanation that the sentence was based on factors independent of the guidelines So the sentence imposed must not have been influenced in any way by the erroneous guidelines Here, the record demonstrates that, in fact, it was selected based on the erroneous guidelines Mr. Juarez received a 365-month sentence, which corresponded with the exact top of the erroneous guidelines range And the judge, even in suggesting that she would impose the same enhancement, still relied on the reasoning of the erroneous interpretation of the guidelines to make that statement So certainly there is nothing in the record that demonstrates that the district court's sentence was imposed for reasons independent of the guidelines Thank you. I don't have anything. Thank you. McLaren? Good morning. I think at least it's still morning. My name is Ron McLaren. I represent the United States in this appeal, and I'm joined this morning by John Murphy and James Baer, who are trial counsel in this case I'm going to speak briefly about the 404B evidence and then move on to the body armor unless there's any questions about the deliberate ignorance instruction This case is about a police officer who shamelessly used his position to help the Grimaldo drug trafficking organization The defendant, Officer Juarez, relied on a defense that he didn't know that the Grimaldos were drug dealers, that they were instead legitimate businessmen This defense justified the use of the other act's evidence in this case to show his intent, his knowledge, his lack of mistake And so first, as to the 404B evidence, it's generally true that a plea of not guilty and a drug conspiracy puts the defendant's intent sufficiently at issue And so we had that here We also have, more than that, we have Officer Juarez claiming that he thought that the Grimaldos were legitimate businessmen The 404B evidence in this case then went to show, went to rebut Juarez's claims and show again his knowledge, lack of mistake, his intent, the sorts of things described by Beecham and described in the pattern of jury instruction Was this used as rebuttal evidence? I mean, had he presented his defense already when this evidence was presented to the jury? Your Honor, Juarez did not put on, did not call any witnesses He did, however, in his opening statement through counsel, suggest that he believed that the Grimaldos were legitimate businessmen This was a part of his defense that was made very clear to the jury Did it come up in questioning of witnesses? It did, Your Honor. There were questions along the lines of, I don't have the records directly in front of me, but just because But government witnesses, defense counsel would cross-examine and raise this issue through the questions? Yes, Your Honor, and so the example that comes to mind was just because somebody happens to do business with a drug dealer doesn't mean that they know that they're a drug dealer or something like that As to potential prejudice, any potential prejudice in this case was mitigated by the careful actions of the district court and the government At record 431 is Judge Vance's order limiting the 404B evidence to one day of trial in her words, so that it would avoid confusing the issues and so that her instructions to the jury would be more meaningful How long, how many days did the trial take? I believe it was four days, Your Honor So one-fourth of the evidence was other offenses or other wrong acts? The other acts was limited to the last day of trial, but it wasn't the entire last day of trial, it was about three or four hours At record 1318, before the government introduced the evidence, and at 1550, during her final jury charge Judge Vance repeated the pattern jury instructions about the 404B evidence, telling the jury how it was to be used In addition to the steps taken by the district court, the government provided a detailed bill of particulars, that's at 284 and a detailed 404B notice, which is at 339, so that defense counsel knew exactly what was coming and so the district court knew exactly what was coming The government also referred to the 404B evidence as special evidence, this is something that's brought up in the briefing not to draw extra attention to it, but instead to make it clear to the jury that it was to be used for this special purpose this other purpose, to show Juarez's motive, intent, opportunity, etc. The probative value of the evidence, coupled with the careful steps taken by the district court and the government justified the use of the other acts evidence in this case Like I said, if there are no further questions about the 404B evidence or the Ossert instruction, I'll move on to the body armor enhancement As to the body armor enhancement, I'll start off by saying that common sense has to mean something It makes sense, in this case, that Congress and the Sentencing Commission would want to prevent drug traffickers from getting body armor and becoming unstoppable for police It makes sense that this would extend to conduct other than just wearing body armor to stop bullets It does not make sense that it would extend to just bartering only and nothing else Common sense also means you take words as they come, and the words of this guideline are quite limited So I think it's almost not common sense to say barter doesn't mean barter It means buy, sell, negotiate, and everything else Well, Your Honor, I agree that the language in this guideline is quite limited It's quite difficult for your position I would add two points on this One, it's not our contention that barter includes sale, but that use includes sale So use includes bartering and sale and use to stop bullets To move on to the second point here, we use a hypothetical in our brief, and I'd like to expand on that If a person over here gives body armor, if they bring it in from the outside world and they give it to a drug trafficker over here They're bringing it in, introducing it to this drug trafficking conspiracy That's the conduct that this guideline speaks to What the drug trafficker gives in return for that body armor, whether it's other goods in the case of a barter whether it's money in the case of a sale, whether it's nothing in the case of a gift that should not be dispositive of whether this guideline applies This guideline was written to keep body armor out of the hands of violent criminals and drug traffickers Interpreting the guideline otherwise would lead to the kind of absurd and unreasonable results that courts are to avoid when interpreting statutes and guidelines If there's no further questions, I'll briefly conclude In conclusion, the carefully handled 404B evidence was justified because of Juarez's defense of ignorance that he maintained throughout the proceedings And use of body armor enhancement comports with policy and a common sense understanding Although Judge Southwick, I see common sense could go both ways here A common sense understanding of the guideline that bulletproof vests should be out of the hands of drug traffickers And for these reasons, the government respectfully requests that this court affirm Juarez's convictions and sentence Thank you The government in its argument asks this court to come up with a novel definition of use But use is defined in the guidelines commentary And Stinson says where the guidelines commentary is not inconsistent with the guidelines language It is authoritative And here the guidelines exclusively define use to include, again, employment to protect one from gunfire Or means as a use of bartering So to the extent that the government is arguing for a different definition, that would be in violation of Stinson Second, the government's common sense argument that Congress wanted to limit body armor And thus it should apply in this case, fails under its own logic Under the government's logic, then defendants should also always be punished where they possess body armor And in fact, the guidelines expressly exclude that So criminal statutes and sentencing statutes are allowed to draw distinctions And again, based on the Watson Supreme Court case, the fact that an asymmetry exists does not create an absurd result When the guidelines language is clear, it must be followed And to the extent that the government is arguing that there is an ambiguity that remains, the rule of lenity would apply If we've reached through all of the rest of our canons of statutory construction Then the sentencing guidelines should be applied against the government, should be strictly construed And where we have here plain language that sets out an exclusive definition And by its definition, does not include the defendant's conduct The guidelines should not apply It seems to me this is a case that's relatively plain I don't want to reject the government's argument outright But almost inexplicable language And that's the problem It's not clear why the commission would have wanted to do it this way You've given me some possibilities So we're just faced with an odd guideline choice of words But the choice is there And the choice is there And in fact, Your Honor, the deference to the sentencing guidelines commentary Doesn't depend on understanding an independent reason for why the commentary exists I know of no case where the commentary is rejected just because a different interpretation would make more sense It's required to be against the plain meaning of the guideline itself Thank you, Your Honor Thank you Law students might have noticed that the four cases we had today